# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. AMERICAN ENERGY PARTNERS, LP, an Oklahoma limited partnership, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. CIV-13-927-L |
| v. | ) ) |
| 2. AMERICAN ENERGY CORPORATION, an Ohio corporation, | ) ) ) |
| Defendant. | ) ) |

---

## PLAINTIFF AMERICAN ENERGY PARTNERS, LP'S
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Anthony L. Rahhal, OBA #14799
Michael D. McClintock, OBA # 18105
Zachary A.P. Oubre, OBA #30666
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439
anthony.rahhal@mcafeetaft.com
michael.mcclintock@mcafeetaft.com
zach.oubre@mcafeetaft.com

Matthew A. Taylor
Jeffrey S. Pollack
Samuel W. Apicelli
(Admitted *Pro Hac Vice*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
mataylor@duanemorris.com
jspollack@duanemorris.com
swapicelli@duanemorris.com

### *ATTORNEYS FOR PLAINTIFF*

October 16, 2013

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................. 1

II.  BACKGROUND .................................................................................. 2

    A.   Procedural Background .......................................................... 2

    B.   Factual Background ................................................................ 5

III. ARGUMENT ...................................................................................... 7

    A.   Century Mine Possesses Sufficient Contacts With Oklahoma
        Such That The Assertion Of Personal Jurisdiction Over It Is
        Appropriate And Consistent With Traditional Notions Of Fair
        Play And Substantial Justice .................................................. 7

        1.   Legal Standard ............................................................... 7

        2.   Century Mine's Demand Letter And Email to American Energy
            Partners Is Sufficient Under Tenth Circuit Law For The
            Assertion Of Specific Jurisdiction Over Century Mine To Be
            Proper ............................................................................. 9

        3.   Century Mine Sells Coal In Oklahoma And Is Subject To The
            Court's General Jurisdiction ......................................... 11

        4.   Should The Court Determine That The Factual Record Is
            Insufficient To Find That Century Mine Possesses Sufficient
            Contacts With Oklahoma To Make The Assertion Of Personal
            Jurisdiction Over It Appropriate, American Energy Partners
            Should Be Permitted To Conduct Jurisdictional Discovery ...... 13

        5.   The Assertion Of Personal Jurisdiction Over Century Mine Is
            Consistent With The Traditional Notions Of Fair Play And
            Substantial Justice ........................................................ 14

    B.   Venue Is Proper Because The Court Possesses Personal
        Jurisdiction Over Century Mine .......................................... 17

    C.   This Is A Proper Declaratory Judgment Action Warranting The
        Court's Consideration ........................................................... 17

1.  The Factors The Court Must Consider In Determining Whether To Adjudicate A Declaratory Judgment Action Weigh Heavily In Favor Of Maintaining This Case And Denying Century Mine's Motion To Dismiss ............................................................ 17

2.  This Case Does Not Involve Procedural Fencing ........................ 19

3.  This Case Was Not Filed In Anticipation Of A Same Issues In A Court Of Coordinate Jurisdiction ............................................. 21

IV. CONCLUSION ................................................................................. 23

DM2\4513821.1

# TABLE OF AUTHORITIES

**Cases**

*Anadigics, Inc. v. Raytheon Co.*
  903 F. Supp. 615 (S.D.N.Y. 1995) .................................................................. 16

*Bounty–Full Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.*
  923 F. Supp. 950 (S.D. Tex. 1996) ................................................................. 10

*Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc.*
  2005 U.S. Dist. LEXIS 6242 (N.D. Ill. Feb. 16, 2005) ................................... 16

*Buzas Baseball, Inc. v. Board of Regents*
  1999 U.S. App. LEXIS 21630 (10th Cir. Utah 1999) ..................................... 21

*Charles Mach. Works, Inc. v. Van Buren Equip., Inc.*
  2005 U.S. Dist. LEXIS 45468 (W.D. Okla. May 24, 2005) ........................... 20

*Collins v. Synthes USA Sales, LLC*
  2010 U.S. Dist. LEXIS 32768 (N.D. Ohio Apr. 2, 2010) ......................... 22, 23

*CompuServe, Inc. v. Patterson*
  89 F.3d 1257 (6th Cir. Ohio 1996) ................................................................. 10

*Dudnikov v. Chalk & Vermilion Fine Arts*
  514 F.3d 1063 (10th Cir. 2008) ............................................................ passim

*Edwards v. Pulitzer Publishing Co.*
  716 F. Supp. 438 (N.D. Cal. 1989) ................................................................ 10

*Franklin Life Ins. Co. v. Johnson*
  157 F.2d 653 (10th Cir. 1946) ........................................................................ 18

*Gilyard v. Gibson*
  2012 U.S. Dist. LEXIS 20687 (W.D. Okla. Jan. 23, 2012) ........................ 2, 19

*H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.*
  979 F. Supp. 627 (N.D. Ill. 1997) .................................................................. 16

DM2\4513821.1

*Hausler v. Felton*
739 F. Supp. 2d 1327 (N.D. Okla. 2010)........................................................4

*Houston Trial Reports, Inc. v. LRP Publs., Inc.*
85 F. Supp. 2d 663 (S.D. Tex. 1999) .........................................................16

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*
102 F.3d 453 (10th Cir. 1996) ...............................................................12

*O'Hare International Bank v. Lambert*
459 F.2d 328 (10th Cir. 1972) ...............................................................15

*Obsolete Ford Parts v. Ford Motor Co.*
306 F. Supp. 2d 1154 (W.D. Okla. 2004).....................................................20

*Oki America, Inc. v. Tsakanikas*
1993 U.S. Dist. LEXIS 19475 (N.D. Cal. 1993) .............................................10

*Overstock.com, Inc. v. Furnace Brook, LLC*
420 F. Supp. 2d 1217 (D. Utah 2005)........................................................17

*Pharm. Providers of Okla., Inc. v. Q Pharm., Inc.*
2013 U.S. Dist. LEXIS 55567 (W.D. Okla. Apr. 18, 2013)...................................7

*Rolico Aviation Ltd. v. Mansfield Helifilght, Inc.*
2008 U.S. Dist. LEXIS 17171 (W.D. Okla. Mar. 5, 2008) ..................................13

*Scooter Store, Inc. v. Spinlife.com, LLC*
2010 U.S. Dist. LEXIS 98124 (S.D. Ohio Sept. 1, 2010) ..........................1, 16, 21

*Sizova v. Nat'l Inst. of Stds. & Tech.*
282 F.3d 1320 (10th Cir. 2002) ..............................................................13

*Surefoot LC v. Sure Foot Corp.*
531 F.3d 1236 (10th Cir. 2008) ..............................................................17

## Rules

Federal Rule of Civil Procedure 12(b)(2).........................................................7

DM2\4513821.1

# I.    **INTRODUCTION**

Defendant American Energy Corporation – Century Mine's ("Century Mine") Motion to Dismiss should be denied because Century Mine is subject to the Court's jurisdiction and because this case was properly filed under the Declaratory Judgment Act by Plaintiff American Energy Partners, LP ("American Energy Partners").

First, Century Mine possesses sufficient contacts with Oklahoma to make it subject to the Court's personal jurisdiction.  Century Mine's Motion to Dismiss concedes that Century Mine makes sales to and has contacts with Oklahoma.  Moreover, there is no dispute that Century Mine purposefully directed activities giving rise to this case at a resident of this forum, namely American Energy Partners, by sending a demand letter threatening American Energy Partners with suit if it did not cease the use of its name.  Such conduct is sufficient in the Tenth Circuit for the assertion of personal jurisdiction over Century Mine to be appropriate and consistent with traditional notions of fair play and substantial justice.  *See Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1071 (10th Cir. 2008).

This case is also a valid and proper use of the declaratory judgment act.  The filing of this action was not a "tactical device" or "procedural fencing."  Instead, American Energy Partners, in reasonable apprehension of suit and seeking to protect its legitimate business interests and rights in its name, filed this case in this judicial district because this district possesses the most meaningful connections to the case at bar.  Intellectual property infringement suits, such as this, focus on the activities of the alleged infringer, in this case American Energy Partners.  *See Scooter Store, Inc. v. Spinlife.com, LLC*, 2010

U.S. Dist. LEXIS 98124, at *11-12 (S.D. Ohio Sept. 1, 2010). American Energy Partners' principal place of business, where it makes and directs all business and marketing decisions, is located in Oklahoma City, and so are all of American Energy Partners' employees who are likely to testify regarding American Energy Partners' use of its name and all documents related thereto. Thus, filing in this judicial district was not a tactical ploy by American Energy Partners. It was a logical decision. The Court should, therefore, deny Century Mine's Motion to Dismiss.

## II.      BACKGROUND

### A.      Procedural Background

On August 23, 2013, Defendant American Energy Partners received a letter from Michael O. McKown, Century Mine's Treasurer, accusing American Energy Partners of trademark infringement and threatening American Energy Partners with suit if, by 12:00 PM on August 28, 2013 – just five days after receiving Century Mine's letter – American Energy Partners did not agree to cease use of its name. (Compl. ¶ 12, Exh. 1.)

In its Motion to Dismiss, Century Mine points to various materials outside the pleadings to support its argument that this action is the alleged byproduct of "procedural fencing" by American Energy Partners. None of these materials are properly before the Court on a Motion to Dismiss.[1] Regardless, nothing submitted by Century Mine shows that American Energy Partners engaged in "procedural fencing." To the contrary, those

---

[1] *Gilyard v. Gibson*, 2012 U.S. Dist. LEXIS 20687 (W.D. Okla. Jan. 23, 2012) (court may not consider matters outside the pleadings on a motion to dismiss).

DM2\4513821.1

materials show gamesmanship and posturing by Century Mine, which precipitated the filing of this action for a declaratory judgment by American Energy Partners.

After receiving Century Mine's August 23, 2013 letter, American Energy Partners' General Counsel, Bob Kelly, telephoned Century Mine's Secretary, Michael McKown. (Email from Bob Kelly to Michael McKown dated August 28, 2013, a copy of which is attached to the Declaration of James R. Turner (the "Turner Dec.") submitted in support of Century Mine's Motion to Dismiss, Doc. 20-1.) After talking with Mr. McKown, Mr. Kelly sent Mr. McKown an email, thanking Mr. McKown for talking with him and informing Mr. McKown that American Energy Partners is "working with outside counsel to determine how to respond to your letter." (*Id.*) Despite Century Mine's claims to the contrary, Mr. Kelly did not engage Mr. McKown in settlement negotiations. (*Id.*) And, as the materials submitted by Century Mine show, rather than give American Energy Partners a reasonable time in which to review Century Mine's claims, Mr. McKown responded to Mr. Kelly's phone call and email by offering just two additional days for American Energy Partners to respond to Century Mine's demands. (Email from Michael McKown to Bob Kelly dated August 28, 2013, a copy of which is attached to the Turner Dec.) Century Mine was not interested in engaging in any dialogue with American Energy Partners, let alone settlement discussions.[2]

---

[2] The materials submitted by Century Mine, outside the pleadings, also show that Century Mine did not, as it claims, agree to withhold filing its complaint during Mr. Kelly's phone conversation with Mr. McKown. (Turner Dec. ¶¶ 22-23.) That agreement only came later via email. (Email from Michael McKown to Bob Kelly dated August 28, 2013, a copy of which is attached to the Turner Dec.) And, as noted above, the extension offered was not meaningful.

Based upon this email exchange, American Energy Partners, in reasonable apprehension of suit and seeking to protect its legitimate business interests and rights in its name, filed this case, seeking a declaratory judgment that its name does not constitute unfair competition under federal or common law (Count I), trademark infringement under Ohio statutory or common law (Count II), or a violation of Ohio's Deceptive Trade Practices Act (Count III), and that Plaintiff has no protectable interest in the "American Energy" formative on its own (Count IV).

On August 30, 2013 – *after* American Energy Partners filed suit in the Western District of Oklahoma – Plaintiff filed a Complaint in the Court of Common Pleas for Belmont County Ohio, captioned *American Energy Corporation v. American Energy Partners, LP & Aubrey McClendon*, No. 13 CV 0317, (the "Ohio Action"), alleging the same issues and claims that are in dispute in this case against American Energy Partners and its Chief Executive Officer, Aubrey McClendon. American Energy Partners and Mr. McClendon were served with the Complaint on September 4, 2013 and, on September 9, 2013, removed Plaintiff's state court action to the United States District Court for the Southern District of Ohio (Case No. 13-CV-00886). On September 25, 2013, American Energy Partners and Mr. McClendon moved to dismiss or, in the alternative, to transfer that case to this Court. A copy of that Motion to Dismiss or, in the Alternative, to Transfer Case (the "Ohio Motion"), is attached as Exh. "1."[3]

_____

[3] "'A court ruling on a motion to dismiss may take judicial notice of matters in the public record, including pleadings and orders in previous cases, without converting a Rule 12(b)(6) motion into a motion for summary judgment.'" *Hausler v. Felton*, 739 F. Supp.

## B.   Factual Background

Century Mine seeks to evade this case on the grounds of lack of personal jurisdiction.   It further claims that American Energy Partners engaged in "procedural fencing" by filing this case.   As follows, the facts do not support these claims.   Century Mine is subject to the Court's personal jurisdiction.   And, the filing of this case in this judicial district (the locus of all events giving rise to this action) was a natural and logical decision by American Energy Partners, not a tactical ploy.

There is no dispute that Century Mine sells coal throughout the United States, including Oklahoma.[4]   (Compl. ¶ 10; *see also* Mot. to Dismiss at 12; Declaration of James R. Turner ¶ 16.)   James R. Turner, Century Mine's Treasurer, concedes this.   (Mot. to Dismiss at 12; Declaration of James R. Turner ¶ 16.)   However, in his declaration Mr. Turner coyly obscures the volume and frequency of those sales.   (*Id.*)   The necessary implication from Mr. Turner's silence on those issues is that Century Mine's sales into Oklahoma are substantial, continuous, and systematic.

Century Mine also concedes that it sends sales personnel into Oklahoma.   (*Id.* ¶ 15.)   Again, Mr. Turner parses his words carefully in his declaration.   He does not state that Century Mine has no sales personnel in Oklahoma.   Instead, he states merely that Century Mine does not have "*regular* sales personnel in the State of Oklahoma," making

---

2d 1327, 1329 (N.D. Okla. 2010) (quoting *Arthur Anderson, LLP v. Fed. Ins. Co.*, 2007 U.S. Dist. LEXIS 18959 (N.D. Ill. March 16, 2007)).

[4] American Energy Partners, on the other hand, does not mine or sell coal.   (Compl. ¶ 9.) And, contrary to Century Mine's unsubstantiated claims in its Motion to Dismiss, (Mot. to Dismiss at 2), American Energy Partners and Century Mine do not compete for the same customers.   (*Id.* ¶ 29.)

it clear that Century Mine does in fact have some sort of sales personnel (other than "regular" sales personnel) in this state.  (*Id.*) (emphasis added).  In this manner, Mr. Turner purposefully obscures how many sales personnel Century Mine has in Oklahoma and how frequently they are present in Oklahoma.  As with Mr. Tuner's statements regarding Century Mine's sales in Oklahoma, the necessary implication from his silence on these issues is that Century Mine's sales personnel are present in Oklahoma on a continuous and systematic basis.

Century Mine has also purposefully directed activities giving rise to this case at a resident of this forum, namely American Energy Partners.  Century Mine sent a demand letter to American Energy Partners via email and FedEx.  (Compl. at ¶ 10, Exh. 1)  That letter was addressed to American Energy Partners' Chief Executive Officer, Aubrey McClendon, at American Energy Partners' principal place of business in Oklahoma City.  (Compl. at Exh. 1.)  In that letter, Century Mine threatened to file suit against American Energy Partners, seeking injunctive relief and "all other legal remedies" if American Energy Partners did not cease and desist the use of the formative "American Energy." (*Id.*)

Accordingly, as stated above, American Energy Partners commenced this action for a declaratory judgment that it does not infringe any alleged rights Century Mine claims to possess in "American Energy."  Filing suit in this judicial district was not a tactical ploy.  To the contrary, this judicial district is the most logical place for this case to be heard.  It is where all of the conduct related to the alleged infringement occurred.  American Energy Partners' principal place of business, where it makes and directs all

business and marketing decisions, is located in Oklahoma City.  (Compl. at ¶ 2, Exh. 1; Declaration of Scott R. Mueller submitted in support of the Ohio Motion (the "Mueller Decl.") at ¶ 3, attached hereto as Exh. 1.1.)   Additionally, all of the documents in American Energy Partners' possession related to its selection of American Energy Partners' name are located in its offices in Oklahoma City.  (*Id.* ¶ 9-10.)  Finally, all of American Energy Partners' employees who are likely to testify regarding American Energy Partners' selection of the American Energy Partners name, and American Energy Partners' business and marketing activities, reside and work in the Western District of Oklahoma.  (*Id.* ¶ 11.)   Accordingly, for each of these and the reasons that follow, Century Mine's Motion to Dismiss should be denied.

## III. ARGUMENT

### A. Century Mine Possesses Sufficient Contacts With Oklahoma Such That The Assertion Of Personal Jurisdiction Over It Is Appropriate And Consistent With Traditional Notions Of Fair Play And Substantial Justice

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) "allows a defendant to move for dismissal on the basis of a lack of personal jurisdiction."  *Pharm. Providers of Okla., Inc. v. Q Pharm., Inc.*, 2013 U.S. Dist. LEXIS 55567, at *3 (W.D. Okla. Apr. 18, 2013) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)).  "In analyzing personal jurisdiction, the Court 'take[s] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint' and 'resolve[s]

any factual disputes in the plaintiff's favor.'" *Id.* at *3-4 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

"Personal jurisdiction over a nonresident defendant must be proper under the laws of both the forum state and the due process clause of the United States Constitution." *Id.* at *4. "Because Oklahoma's long-arm statute, 12 Okla. Stat. § 2004(F), 'supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry.'" *Id.* (quoting *Shrader*, 633 F.3d at 1239). "The constitutional due process analysis requires the defendant to have sufficient minimum contacts with the forum state and for the exercise of personal jurisdiction over the defendant not to offend traditional notions of fair play and substantial justice." *Id.*

"There are two ways to satisfy the 'minimum contacts' test. If a defendant has continuous or systematic contacts with the forum state, the court may exercise general personal jurisdiction over the defendant. Even if the court cannot exercise jurisdiction over a nonresident defendant generally, the court may assert specific jurisdiction 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at *5 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Under either test – general jurisdiction or specific jurisdiction – the assertion of personal jurisdiction over Century Mine is appropriate.

DM2\4513821.1

2.  **Century Mine's Demand Letter And Email to American Energy Partners Is Sufficient Under Tenth Circuit Law For The Assertion Of Specific Jurisdiction Over Century Mine To Be Proper**

Century Mine's August 23, 2013 demand letter, addressed to American Energy Partners' principal place of business in Oklahoma City, and its August 28, 2013 email to Mr. Kelly are sufficient, pursuant to controlling Tenth Circuit precedent, to make Century Mine subject to the Court's specific jurisdiction.

In *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1071 (10th Cir. 2008), the Tenth Circuit held that assertion of specific jurisdiction over a non-resident defendant was appropriate where, as here, the defendant "purposefully directed its activities at residents of the forum" through the mailing of demand letters. "Purposeful direction," the court held, occurs where a defendant (1) commits an intentional act, *i.e.* authoring, editing, or publishing a written work, that was (2) directly aimed at the forum state, with (3) knowledge that the brunt of the injury would be felt in the forum state. *Id.* at 1072.

At issue in *Dudnikov* was whether the defendant Chalk & Vermilion Fine Arts ("Chalk") purposefully directed sufficient activities at residents of Colorado when it (a) contacted eBay in California accusing Colorado residents – Karen Dudnikov and Michael Meadors (collectively "Dudnikov") – of copyright infringement and asking that their eBay auction site be shut down; and (b) sent an email to Dudnikov in Colorado informing Dudnikov that Chalk intended to file suit within 10 days in federal court. *Id.* at 1069  In finding that Chalk purposefully directed its conduct to Colorado, the Tenth Circuit held

9

that Chalk "knew that the brunt of the injury," shutting down Dudnikov's eBay auction, "would be felt in the forum state." *Id.* at 1077. The Tenth Circuit also found that Dudnikov's injuries arose from the defendant's contacts with Colorado because "but for" the defendant's contact with eBay (in *California*) and threatening emails directed to Colorado, Dudnikov would "have had no reason to seek a declaratory judgment that [her] actions did not run afoul of defendant's rights." *Id.* at 1079.

In reaching this conclusion, the Tenth Circuit approvingly cited the Sixth Circuit's opinion in *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. Ohio 1996). *See Dudnikov*, 514 F.3d at 1080. In that case, the Sixth Circuit found that specific jurisdiction existed over the defendant because "CompuServe's declaratory judgment action arose . . . because [the defendant]," like Century Mine in this case, "threatened, via regular and electronic mail, to seek an injunction against CompuServe's sales of its software product, or to seek damages at law if CompuServe did not pay to settle his purported claim. Thus, [the defendant's] threats – which were contacts with Ohio – gave rise to the case before us." *Id.* at 1267.

Other cases have similarly held that demand letters suffice to establish specific jurisdiction over a defendant. *See Oki America, Inc. v. Tsaka*nikas, 1993 U.S. Dist. LEXIS 19475 (N.D. Cal. 1993); *Edwards v. Pulitzer Publishing* Co., 716 F. Supp. 438 (N.D. Cal. 1989); *Bounty–Full Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.*, 923 F. Supp. 950, 957 (S.D. Tex. 1996). The same result should be reached here.

Similar to the defendants in *Dudnikov* and *CompuServe*, Century Mine sent a demand letter to American Energy Partners via email and FedEx. (Compl. at ¶ 10, Exh.

1.) That letter was addressed to American Energy Partners' Chief Executive Officer at its principal place of business in Oklahoma City, the location from which American Energy Partners directs all of its business and marketing activity. (Compl. at Exh. 1, Mueller Decl. at ¶ 3, attached hereto as Exh. 1.1.) In that letter, Century Mine threatened to file suit against American Energy Partners and seek injunctive relief and "all other legal remedies" if American Energy Partners did not agree to cease using the "American Energy" formative. (Compl. at Exh. 1.) A subsequent email, dated August 28, 2013 was sent by Century Mine to American Energy Partner's General Counsel in Oklahoma City. Century Mine's conduct was directed to Oklahoma as the "brunt of the injury," ceasing the use of American Energy Partners' name and any other relief, *i.e.* damages, "would be felt in [Oklahoma]," the situs of American Energy Partners' principal place of business where all of its business and marketing decisions are made. *Dudnikov*, 514 F.3d at 1077. Thus, pursuant to controlling Tenth Circuit precedent, the assertion of specific jurisdiction over Century Mine is appropriate.[5]

### 3. Century Mine Sells Coal In Oklahoma And Is Subject To The Court's General Jurisdiction

The Court also possesses general jurisdiction over Century Mine. There is no dispute that Century Mine sells coal and conducts business in Oklahoma. Therefore, the assertion of general jurisdiction over Century Mine is appropriate. In this circuit, general jurisdiction is adjudged based upon: "(1) whether the corporation solicits business in the

---

[5] The Court should be guided by the Tenth Circuit's holding in *Dudnikov* and not the cases to which Century Mine cites. *Dudnikov* remains good and controlling law and none of the cases cited by Century Mine in its Motion to Dismiss overrule it.

state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996).

Century Mine sells coal throughout the United States, including Oklahoma. (Compl. ¶ 10; Turner Dec. ¶ 16, Doc. 20-1.) Century Mine concedes this. (*Id.* ¶ 16.) However, in his declaration Mr. Turner obscures the volume and frequency of Century Mine's Oklahoma sales. (*Id.*) Specifically, Mr. Turner states that Century Mine "does not generate a substantial percentage of its sales through revenue generated from Oklahoma customers." (Mot. to Dismiss at 12; Declaration of James R. Turner ¶ 16.) However, even a small percentage of a large book of business can be substantial and continuous, persisting over many years.

Century Mine also does not contest that it sends sales personnel into Oklahoma. Instead, Mr. Turner states only that Century Mine does not have "*regular* sales personnel in the State of Oklahoma," making it clear that Century mine does in fact have some sort of sales personnel (other than "regular" sales personnel) in this state.[6] (Declaration of

---

[6] Further confusing this issue, Mr. Turner also claims that Century Mine "does not travel to the State of Oklahoma by way of salespersons" and that "it has never sent its employees to Oklahoma to solicit sales." (Turner Dec. ¶ 12.) Whether "salespersons" and "sales personnel" are the same or different and what their responsibilities are is unclear from Mr. Turner's Declaration. From what he states, it is likely that Century Mine solicits or generates sales in Oklahoma through third party sales personnel. Either way, Century Mine admittedly has a presence and conducts sales in Oklahoma.

James R. Turner ¶ 15) (emphasis added). In this manner, Mr. Turner purposefully obscures how many sales personnel Century Mine has in Oklahoma and how frequently they are present in Oklahoma. The implication from his silence on this issue and the extent of Century Mine's sales in Oklahoma is that Century Mine's contacts with Oklahoma are substantial and continuous. Thus, the assertion of general jurisdiction over Century Mine is appropriate.

    **4.**     **Should The Court Determine That The Factual Record Is Insufficient To Find That Century Mine Possesses Sufficient Contacts With Oklahoma To Make The Assertion Of Personal Jurisdiction Over It Appropriate, American Energy Partners Should Be Permitted To Conduct Jurisdictional Discovery**

Should the Court determine that the facts before it are insufficient to determine that Century Mine possesses sufficient contacts with Oklahoma to make the assertion of personal jurisdiction over it appropriate, American Energy Partners respectfully requests that it be permitted to conduct limited discovery regarding Century Mine's contacts with Oklahoma.

Refusal to grant jurisdictional discovery "constitutes an abuse of discretion . . . if pertinent facts bearing on the question of jurisdiction are controverted . . . or a more satisfactory showing of the facts is necessary." *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). Based upon Mr. Turner's declaration, it is apparent that Century Mine sends sales personnel to and conducts sales in Oklahoma. Century Mine should, therefore, be permitted to conduct limited discovery to uncover the full extent of those contacts. *Id.*; *see also Rolico Aviation Ltd. v. Mansfield Helifilght, Inc.*,

2008 U.S. Dist. LEXIS 17171 (W.D. Okla. Mar. 5, 2008) (granting request to take

jurisdictional discovery and requiring parties to submit discovery schedule).

### 5. The Assertion Of Personal Jurisdiction Over Century Mine Is Consistent With The Traditional Notions Of Fair Play And Substantial Justice

Should the Court find that Century Mine possesses sufficient contacts with

Oklahoma to make it subject to the Court's specific or general jurisdiction, it is also the

case that the assertion of personal jurisdiction over Century Mine would be consistent

with traditional notions of fair play and substantial justice. "[W]ith minimum contacts

established, it is incumbent on defendants to 'present a compelling case that the presence

of some other considerations would render jurisdiction unreasonable.'" *Id.* at 1080. "In

making such an inquiry courts traditionally consider factors such as these: (1) the burden

on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's

interest in receiving convenient and effectual relief, (4) the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and (5) the shared

interest of the several states [or foreign nations] in furthering fundamental social

policies." *Id.*

As with the defendant in *Dudnikov*, none of these factors weigh in favor of

Century Mine. With respect to the burden associated with litigating in Ohio, Century

Mine's accusations of trademark infringement "indicates a willingness to litigate in some

federal court in the United States." *Id.* Moreover, Century Mine and American Energy

Partners are diverse parties. Indeed, a parallel federal proceeding is currently pending in

Ohio regarding similar claims to those at issue in this case. And, as in *Dudnikov*, "there

are a finite number of possible fora in this country in which this case might be litigated."

*Id.* That includes American Energy Partners' home state of Oklahoma or Century Mine's

home state of Ohio. "As in any case in which the parties reside in different fora, one side

must bear the inconvenience of litigating on the road." *Id.* at 1081. Moreover,

Defendant's case would not be "hindered by the territorial limits on the . . . district

court's power to subpoena relevant witnesses, or indeed hampered in any other

significant way." *Id.* American Energy Partners is located in this district, as are all of its

employees, including those who participated in the selection of the American Energy

Partners name, and all of its documents relevant to the claims at issue. (Mueller Dec.

¶¶ 3, 9-11, Exh. 1.1.)

Additionally, there is no "reason to think that" this Court "would be unable to

adjudicate . . . claims under federal law with equal fairness and effectiveness" as a

federal court seated in Ohio. *Dudnikov*, 514 F.3d at 1081. The interstate judicial

system's interest in obtaining the most efficient resolution of controversies is also served

by maintaining personal jurisdiction over Century Mine in this case. This case is the

first-filed. *See O'Hare International Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir.

1972) ("It is well established in this Circuit that where the jurisdiction of a federal district

court has first attached, that right cannot be arrested or taken away by proceedings in

another federal district court."). Moreover, this judicial district possesses the most

meaningful connection to the claims at issue. Intellectual property infringement suits,

such as this, "often focus on the activities of the alleged infringer, its employees, and its

documents; therefore the location of the alleged infringer's principal place of business is

often the critical and controlling consideration in adjudicating transfer of venue motions." *Scooter Store, Inc. v. Spinlife.com, LLC*, 2010 U.S. Dist. LEXIS 98124, at *11-12 (S.D. Ohio Sept. 1, 2010); *see also Houston Trial Reports, Inc. v. LRP Publs., Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999) ("intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration."); *Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615 (S.D.N.Y. 1995) (same); *H.B. Sherman Mfg. Co. v. Rain Bird Nat'l* Sales Corp., 979 F. Supp. 627, 630 (N.D. Ill. 1997) (same); *Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc.*, 2005 U.S. Dist. LEXIS 6242 (N.D. Ill. Feb. 16, 2005) (same).[7] Accordingly, Century Mine's Motion to Dismiss should be denied because Century Mine possesses sufficient jurisdictional contacts with Oklahoma for the Court to assert personal jurisdiction over it and doing so will not offend traditional notions of fair play and substantial justice.

---

[7] Based on this, among other things, American Energy Partners moved to transfer the action filed in the Southern District of Ohio by Century Mine to this Court. (*See* Ohio Motion, Exh. 1.) In this regard, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is further served by maintaining this action because Century Mine will be before this Court, in any event, should the action pending in the Southern District of Ohio be transferred to this Court.

DM2\4513821.1

**B.  Venue Is Proper Because The Court Possesses Personal Jurisdiction Over Century Mine**

Because the Court possesses personal jurisdiction over Century Mine, venue is appropriate in this case.  *Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F. Supp. 2d 1217 (D. Utah 2005).  Venue is also appropriate because, as discussed above, all of the events giving rise to this action occurred in the Western District of Oklahoma.

**C.  This Is A Proper Declaratory Judgment Action Warranting The Court's Consideration**

**1.  The Factors The Court Must Consider In Determining Whether To Adjudicate A Declaratory Judgment Action Weigh Heavily In Favor Of Maintaining This Case And Denying Century Mine's Motion To Dismiss**

This is a proper declaratory judgment action warranting the Court's consideration. Notably, Century Mine does not dispute that there is a valid case or controversy between the parties.  Instead, Century Mine requests that the Court exercise its rarely used discretion to decline to hear this case.  Whether the Court should exercise that discretion requires it to consider the following factors, which weigh heavily against dismissing this case:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1248 (10th Cir. 2008).

Century Mine's Motion to Dismiss addresses only one of these five factors – namely, the third factor: whether American Energy Partners commenced this suit through alleged "procedural fencing" and or a "race for res judicata." As follows, Century Mine's arguments that American Energy Partners engaged in "procedural fencing" or a "race for res judicata" are unavailing. Regardless, even assuming that American Energy Partners did engage in such conduct (which it did not), every other factor weighs in favor of maintaining this case before the Court and denying Century Mine's motion to dismiss. The resolution of this case would serve a useful purpose in clarifying the legal relations at issue and settling the controversy between the parties. Thus, there is no alternative remedy that is better or more effective than the remedy sought in this case. Additionally, this case will not increase friction between federal and state courts; no state court case is pending.

The fact that these factors weigh against dismissal is compelling. As the Tenth Circuit has held:

> [The] safeguards against 'procedural fencing' and races for res judicata . . . should not deter the courts from giving full force and effect to the purpose of the Declaratory Judgment Act, 28 U.S.C.A. § 400. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of . . . law whenever necessary to the rendition of a judgment.

*Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 656-57 (10th Cir. 1946). Accordingly, Century Mine's Motion to Dismiss should be denied.

## 2.    This Case Does Not Involve Procedural Fencing

Dismissal also is not warranted because American Energy Partners did not engage in "procedural fencing."  The thrust of Century Mine's argument in this regard is that American Energy Partners allegedly misled Century Mine into believing this case could be resolved.  (Mot. to Dismiss at 18.)  That is not the case.

Even if the Court were to go beyond the pleadings and consider the materials submitted by Century Mine in support of its Motion to Dismiss, none of those materials show "procedural fencing" by American Energy Partners.[8]  Century Mine's August 23, 2013 letter threatened to file suit against American Energy Partners, seeking injunctive relief and "all other legal remedies" if American Energy Partners did not agree to cease using the "American Energy" formative by August 28, 2013.  (Compl. at Exh. 1.)  Thereafter, on August 28, 2013, American Energy Partners' General Counsel, Bob Kelly, wrote to Century Mine's Secretary, Michael McKown, thanking Mr. McKown for talking with him earlier that day and informing him that American Energy Partners is "working with outside counsel to determine how to respond to your letter."  (Email from Bob Kelly to Michael McKown, Doc. 20-1.)  Notably, the possibility of settlement was not raised or discussed in this email.  (*Id.*)  To the contrary, any possibility for settlement was squelched when Mr. McKown responded by offering American Energy Partners just two

---

[8] Motions that seek dismissal of declaratory judgment actions on the grounds annunciated in *Surefoot LC*, *supra*, are governed by the well-known Rule 12(b)(6) standard. *Cleveland v. Talent Sport, Inc.*, 2013 U.S. Dist. LEXIS 70157 (W.D. Okla. May 17, 2013); *Foremost Ins. Co. v. Estate of York*, 2011 U.S. Dist. LEXIS 144923 (N.D. Okla. Dec. 16, 2011).  Pursuant to that standard, courts may not consider matters outside the pleadings.  *Gilyard v. Gibson*, 2012 U.S. Dist. LEXIS 20687 (W.D. Okla. Jan. 23, 2012).

additional days to review Century Mine's accusations, thereby depriving American Energy Partners of even a reasonable amount of time to review the claims asserted in Century Mine's August 23, 2013 letter. (Email from Michael McKown to Bob Kelly, Doc. 20-1.) Thus, there is no evidence to support Century Mine's argument that American Energy Partners engaged in "procedural fencing."

This is supported by this Court's holding in *Charles Mach. Works, Inc. v. Van Buren Equip., Inc.*, 2005 U.S. Dist. LEXIS 45468 (W.D. Okla. May 24, 2005). In that case, the plaintiff, similar to American Energy Partners, faced "a real and immediate threat of litigation" evidenced by the fact that the defendant sent a carbon copy of its letter to plaintiff to defendant's attorney. *Id.* at *6. Like Century Mine, the defendant in *Charles Mach. Works* moved for dismissal based upon the holding in *Obsolete Ford Parts v. Ford Motor Co.*, 306 F. Supp. 2d 1154, 1157-58 (W.D. Okla. 2004). In finding the holding of *Obsolete Ford Parts* distinguishable from the case before it, the court held that "there is no suggestion that the plaintiff was attempting to use this action as leverage in subsequent negotiations." *Charles Mach. Works*, 20005 U.S. Dist. LEXIS 45468, at *9. The same is true in this case. There is no evidence or any suggestion in Century Mine's Motion to Dismiss that American Energy Partners is using this action as leverage for settlement. To the contrary, American Energy Partners and Century Mine have engaged in no settlement negotiations.

American Energy Partners' intent in filing this suit was pure. It was not a tactical ploy. It desired a prompt resolution of its right to use its name and, therefore, filed suit in the most logical judicial district. As discussed above, the Western District of Oklahoma

has the most meaningful connection to this case because "intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Scooter Store, Inc.*, 2010 U.S. Dist. LEXIS 98124, at *11-12.[9] Thus, the filing of this suit was not procedural fencing by American Energy Partners.

### 3. This Case Was Not Filed In Anticipation Of A Same Issues In A Court Of Coordinate Jurisdiction

This also is not a case involving an improper anticipatory filing by American Energy Partners. Although "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction," *Buzas Baseball, Inc. v. Board of Regents*, 1999 U.S. App. LEXIS 21630, at *7-8 (10th Cir. Utah 1999), that is not the case here. Indeed, this case is no more "anticipatory" than the action filed by the plaintiffs in *Dudnikov* who filed a declaratory judgment action after receiving a letter threatening them with suit within 10 days. *Dudnikov*, 514 F.3d at 1069.

American Energy Partners filed suit in this judicial district with the intent of trying this case in the most logical jurisdiction – the forum of the alleged infringer's principal place of business from which all alleged infringing activity allegedly occurred and was directed. *Scooter Store, Inc.*, 2010 U.S. Dist. LEXIS 98124, at *11-12.[10] As the

---

[9] *See also* cases cited at p. 15, *supra*.

[10] *See also* cases cited at p. 15, *supra*.

Northern District of Ohio held in *Collins v. Synthes USA Sales, LLC*, 2010 U.S. Dist. LEXIS 32768 (N.D. Ohio Apr. 2, 2010), this is not improper anticipatory conduct. In *Collins*, the defendant Synthes USA Sales, LLC, moved to transfer the case from the Northern District of Ohio to the Eastern District of Pennsylvania where a first-filed declaratory judgment action was pending. In arguing against transfer, the plaintiff contended that the Eastern District of Pennsylvania case was filed in "anticipation" of the Northern District of Ohio action and should, therefore, be disregarded. The magistrate judge rejected plaintiff's argument, finding that the Eastern District of Pennsylvania action should not be disregarded as an "anticipatory" lawsuit because the Eastern District of Pennsylvania was not a "forum with no logical connection to the underlying facts in the case." *Id.* at *4. In affirming the magistrate judge, the trial judge additionally found that, similar to American Energy Partners' connections to the Western District of Oklahoma, Synthes' offices and many of the witnesses and records were all located in Pennsylvania. *Id.* at *7. The same result should be reached in this case.

This forum has a "logical connection" to the underlying facts in this case. *Id.* at 4. American Energy Partners' principal place of business, where it makes and directs all business and marketing decisions is located in Oklahoma City. (Mueller Decl. at ¶¶ 3, Exh. 1.1.) Additionally, all of the documents in American Energy Partners' possession that relate to its selection of the American Energy Partners name are located in its offices in Oklahoma City. (*Id.* ¶ 9-10.) Finally, all of American Energy Partners' employees who are likely to testify regarding American Energy Partners' selection of the American Energy Partners name, and American Energy Partners' business and marketing activities,

reside and work in the Western District of Oklahoma. (*Id.* ¶ 11.) Thus, this action is not an improper anticipatory filing. *Collins v. Synthes USA Sales, LLC*, 2010 U.S. Dist. LEXIS 32768. It is a proper and valid invocation of the Declaratory Judgment Act and Century Mine's Motion to Dismiss should be denied.

## IV.     <u>CONCLUSION</u>

For each of the foregoing reasons, Century Mine's Motion to Dismiss should be denied. Alternatively, should the Court determine that the facts are insufficient to determine that Century Mine is subject to the Court's personal jurisdiction, American Energy Partners respectfully requests that it be permitted to conduct limited jurisdictional discovery regarding Century Mine's contacts with Oklahoma.

DM2\4513821.1

Respectfully submitted,

s/Anthony L. Rahhal
Anthony L. Rahhal, OBA #14799
Michael D. McClintock, OBA #18105
Zachary A.P. Oubre, OBA #30666
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:    (405) 235-9621
Facsimile:     (405) 235-0439
anthony.rahhal@mcafeetaft.com
michael.mcclintock@mcafeetaft.com
zach.oubre@mcafeetaft.com

and

Samuel W. Apicelli
Matthew A. Taylor
Jeffrey S. Pollack
(Admitted *Pro Hac Vice*)
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  (215) 979-1000
Facsimile:  (215) 979-1020
swapicelli@duanemorris.com
mataylor@duanemorris.com
jspollack@duanemorris.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of October, 2013, I electronically transmitted foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants:

Cody L. Towns – ctowns@therodriquezfirm.com
John E. Jevicky – john.jevicky@dinsmore.com
John W. McCauley – john.mccauley@dinsmore.com

/s/ Anthony L. Rahhal

DM2\4513821.1